May it please the Court, my name is Travis Brown, and I represent Huser Construction Company. In this insurance coverage case, I want to talk about three main issues today. First is Mount Hawley's position that the District Court adopted that the subcontractor exception need not be considered or harmonized with the rest of the policy, including Mount Hawley's subcontractor exclusion because it modifies only the Your Work exclusion. There are a couple problems with this argument. The first problem is that it is directly contrary to the Texas Supreme Court's reasoning in Lamar Holmes. In Lamar Holmes, just like here, the Texas Supreme Court was not actually addressing the application of the Your Work exclusion. Rather, on two certified questions from this Court, the Court there was trying to determine the meaning of two terms in the policy's initial grant of coverage. The terms property damage and occurrence. And the insurer there argued, as insurers did for years prior to the decision in Lamar Holmes, that defective construction could never be an occurrence because it wasn't accidental, and that defective construction could never be property damage because it were not within the Your Work exclusion. The Texas Supreme Court placed great emphasis on the subcontractor exception. They looked at the subcontractor exception, and what they ultimately concluded is, why would there be a need for an exception for property damage to and arising out of a subcontractor's work if defective work could never be an occurrence and could never be property damage in the first place? So, in other words, in trying to interpret a provision of the policy that was not within the Your Work exclusion, the Texas Supreme Court looked to the subcontractor exception to help ascertain that meaning. That's exactly what we asked the District Court, and now this Court, to do. And to the extent that the District Court declined to do so, it was contrary to Lamar Holmes and it was error. The second problem with this first main point of failing to consider the subcontractor exception is that it essentially begs the question, by assuming first that the breach of contract exclusion applies and then dismissing the importance of the subcontractor exception, to quote the District Court as a means to preserve coverage. But what Husser asked the District Court to do, and now this Court to do, was a little different, which is to first answer the question of how broadly Mount Holly's breach of contract exclusion applies. And when answering that question, the subcontractor exception becomes critical because if, as Mount Holly asserts, the breach of contract exclusion applies to property damage arising out of any breach of contract by anyone, then you've got an exclusion, a provision in a separate part of the policy that is now meaningless. And under Texas rules of contract interpretation, both in Lamar Holmes and the Kelly Coppedge case that we've not a reasonable interpretation of the breach of contract exclusion. On the other hand, we can give the subcontractor exception meaning by applying Mount Holly's breach of contract exclusion only where the property damage arose out of the insurer's breach of contract. But requires that the injury arise out of the insurer's breach of contract, even standing alone, without considering the subcontractor exception. And how do we know that? We can look to other examples of similarly structured exclusions that are in the Mount Holly policy. For example, the personal and advertising injury breach of contract exclusion, which didn't make it into the record excerpts, but it's on page 77 of the record on appeal. And in the briefs, you know, Mount Holly has sort of attempted to minimize this because two of the cases that we cite discussed that, but it is actually structured almost identically to the Mount Holly breach of contract exclusion. And it says that this insurance does not apply to personal and advertising injury arising out of a breach of contract. It's different because Mount Holly's endorsement just says property damage arising out of breach of contract. Is it your position that the subcontractor exception would remove Schaefer, I mean would not remove Schaefer from coverage because of the breach of contract applying only to Huber? It is our position that not only as to Schaefer, Schaefer is the most obvious example because they're specifically named in the petitions and the underlying lawsuit, but to a number of subcontractors that are implicated in these pleadings, that if there is property damage that arises solely out of their work, the only thing that caused the work was that the subcontractors went out there and did defective work. I'm sorry, that caused the property damage is that the subcontractors went out there and did defective work. Then the only way that the subcontractor exception can have any meaning is if the breach of contract exclusion in Mount Holly's endorsement does not apply in that instance. That's our position, Your Honor. Returning to this point that you almost don't even need the subcontractor exception to interpret Mount Holly's endorsement as we've asked the court. The personal and advertising injury breach of contract exclusion is contained within this policy and we cited the Pinser case out of the 11th Circuit and the Capella Group case out of the Northern District of Texas. In the Pinser case, the court says the language of the breach of contract exclusion, which is structured exactly like the one in the Mount Holly policy, does not clearly indicate who the applicable contracting parties must be for the breach of contract to apply. But the insured's reading that it must be the insured who breaches the contract is reasonable and, in fact, the most obvious one. And in that case, there was no concern over a reading of a separate endorsement that was abroad that it would render an entirely separate provision of the policy meaningless. And that's one of the reasons for—that was one of the points that was made in the amici support that was filed on Husserl's behalf in this case. In the court's opinion, there's a comment that in Lamar Holmes, the Texas Supreme Court mentioned the your work exclusion and its subcontractor exception as merely an example of the type of exclusion that would be contained in the CGL policy. That isn't quite right. The Texas Supreme Court had a detailed and extensive discussion of the history and importance of the subcontractor exception. And we have five amici. We have several of the largest construction trade organizations in Texas and in the country supporting our appeal and saying exactly that. That this is critical coverage. This, for a general contractor like our client, this can be the most important provision of the policy. And there is kind of a front door if a carrier like Mount Holly seeks to remove this important coverage. And that is the CG 2294-1001 endorsement, which simply deletes the subcontractor exception from the policy. What does this policy cover if it does not cover what the point of this is? Well, Your Honor, we have not argued here that coverage is illusory. But frankly, I'm hard-pressed to answer that question. It's difficult for me to find anything that this policy would cover if this court accepts Mount Holly's reading of its breach of contract exclusion. And that's what the court in Aguilar said. They said this is a policy that's sold to a contractor and it has this breach of contract exclusion. And we're hard-pressed to see how this would ever cover anything. So, candidly, that would be Mount Holly's question to answer, and we haven't yet seen what this policy does cover. Certainly not what it covers that would give any meaning and effect to a subcontractor. Is there any other type of policy that would cover this if this doesn't? That would cover property damage arising from an effective construction by a subcontractor? Is that your question? That is and has been since Lamar Holmes and even before the role of the CGL policy. And again, that's what the amici say, is that this is critical. And what happens is contractors and their brokers know that this is critical. And so they get these big, thick policies and they flip through them. And they say, okay, good. We've got the subcontractor exception. We know that's critical. They flip through. They say, okay, good. There's no CD 2294-1001. So it's still in there. And they can no longer rely on that. And in that sense, this appeal is a little bit larger than simply interpreting this breach of contract exclusion. And I think that's kind of what the amici said, which is to what extent can we now remove, can carriers now remove critical coverage without expressly doing so through this sort of backdoor of Mount Holly's own creation with their manuscript endorsement. The two additional issues that I wanted to talk about are this contention that, again, the district court adopted, that an endorsement governs over the main policy language. And Mount Holly proceeded in below and in its briefs in this appeal as if this is kind of an ironclad rule that always applies, always and forever. But what, in fact, the rule is that's set forth in the is that an endorsement cannot be read apart from the main policy. That's Primrose at 382 F. 3rd, 558 at 558. So that's the general rule. And then in the Bayrock case, this court expanded on that rule and said that endorsements and the main policy should be read together unless doing so would negate or render superfluous the additional coverage afforded in the endorsement. And so in Bayrock, and that's 614 F. 3rd at 115. So in Bayrock, what the court was doing was a reading of the policy that found coverage when an insured had specifically purchased an endorsement that provided additional coverage. So what this really is, it's a manifestation of the more basic rule of contract interpretation that the specific governs over the general. So if you purchase specific coverage, we're not going to go back to the main policy and read it in such a way that it deletes that specific coverage. That's not what we're talking about here. Here we have an exclusion contained with an endorsement, and there are scores of cases that say exclusions are to be construed narrowly in favor of coverage. And so we go back to the general rule that an endorsement cannot be read apart from the main policy. And so we have to look at this endorsement and find a way to read it such that all of the words in the policy have meaning. And that was the importance of the Kelly Coppedge case and the Safetire case that we cited out of the Waco Court of Appeals, where the court looked and said, even though this exception to an exclusion only applies to these two other provisions, subsection A and D1, we are not going to read this exclusion in such a way that it renders subsection B meaningless. So there's not this kind of limitation that you can't look outside of the specific exclusion. And the third main issue that has sort of been addressed is this contention that an exclusion cannot create coverage. Mount Holly claims this court has repeatedly rejected that argument and calls it the inclusion trumps the exclusion argument. Cite Cidel, Columbia Casualty, and Hydro Tank. You go look at those cases. Inclusion trumps the exclusion. It's only in there one time. It's in Columbia Casualty. It's attributed to the insured. It's not the court's name for it. And it's directly contrary to Lamar Holmes. And Lamar Holmes, the majority addressed that argument directly and said that's not what we're finding. Thank you. All right. Thank you. Ellie. May it please the court. I think it's only appropriate to begin by saying that every single argument that Husserl is making to this court was specifically considered by Judge Lake. And that's not surprising when you consider the fact, as Judge Lake himself explained in his opinion, that the position that Husserl advances in this case is inconsistent with numerous pronouncements from this court. It's inconsistent with very basic fundamental insurance policy interpretation principles. And maybe most importantly, it's inconsistent with the actual language of the exclusion itself. Every position that Husserl takes in this case, no matter how they try to dress it up, requires the court to do one of three things. Either ignore the actual language of the breach of contract exclusion, rewrite the actual language of the breach of contract exclusion, or add limiting language to the language of the breach of contract exclusion in this case is clear and it's unambiguous. One of the refrains from Judge Lake's opinion at the trial court is that he repeatedly tells Husserl in response to virtually every argument that they make, I'm reading from Judge Lake's opinion, the language of the breach of contract exclusion is unambiguous. Husserl's interpretations fail to overcome the plain language of the breach of contract exclusion. This court will therefore apply the breach of contract exclusion according to its plain language. Would you give me an example of what this policy does cover if all of these exclusions and exceptions? Yes, Your Honor, I will. There's no doubt that this policy provides severe restrictions as it relates to property damage in the construction defect area. There's no doubt about that. That was the intent. But this policy covers virtually any type of bodily injury scenario that arises on the job site. I can tell the court from my own experience in representing this particular client for over 25 years that they've never applied this to construction work. A bodily injury claim is almost always going to be premised in tort as opposed to a breach of contract, and therefore this policy provides extremely broad coverage for bodily injury claims. Now, as it relates to property damage claims, there's no question that the intent of this exclusion is to severely limit that. But this is, Judge, this is not novel in the sense that a number of courts that have considered this scenario have basically suggested to liability insurance carriers, they say, look, if you don't want to cover defective construction by a subcontractor, there are two things you can do. You can either eliminate the subcontractor exception from the your work exclusion, or you can put a subcontractor exception on the subcontractor exception, and then the subcontractor exception is not a losery. And so, in this case, the subcontractor exception was not a losery. Mount Holly chose to do the latter. And this exclusion has been tested a number of times in front of different courts, all of whom have held that this coverage was not a losery provides an exception to the your work exclusion, but only the your work exclusion. The very premise upon which Usar's position is based is just wrong. It is premised on the idea that an exclusionary endorsement like we have here has to somehow square itself with an exception to a completely different exclusion in the body of the policy. Not only is that inconsistent with the fundamental notion that an endorsement trumps the language of the policy, the endorsement itself tells you this changes the language of the policy. But Judge, even more fundamentally than that, there is a case from this court that exposes the fallacy of Usar's position way better than I ever could, and that is the Columbia Casualty case. In Columbia Casualty, you had a circumstance where an insurer was arguing, look, there are these employment-related exclusions in the policy that contain a FELA exception. And so the insured argued, well, wait a minute, now they're trying to apply a pollution exclusion on me, but this is a FELA claim, Your Honor. There's an exception for FELA claims. They tried to graft an exception to an employment-related exclusion into the pollution exclusion. In other words, the insured in that case tried to do exactly what Usar is doing here. They tried to tell the court, Judge, you've got to square up this pollution exclusion with the exception that's contained in these employment exclusions regarding FELA. And the court said, that's just plain wrong. They said an exception to an exclusion in one part of the policy does not have to be squared up with another exclusion. They rise or fall on their own. And even more importantly than that, Your Honor, this court explained, in fact, it is instructive to note that the insurance carrier, if they wanted to create a FELA exception for their pollution exclusion, they clearly knew how to do it, because they'd done it in two other exclusions in the policy. And what the Fifth Circuit said then is the fact that they didn't include that exception in the pollution exclusion is a very clear indication that there was no intent to have such an exception in that exclusion. And to me, I guess more than any other case that we've cited in our brief from this court, I think Columbia Casualty most graphically exposes the fallacy of the very linchpin of Usar's position in this case. There, if you look at the exclusion itself, and just I should point out, Judge Crane nine years ago in Scottsdale v. Mount Holly, which is a case dealing with this exact same exclusion in this construction defect context, he specifically held, just like Judge Lake did, that the exclusion is clear, it's unambiguous, and in response to virtually every type of argument that was being put forth then, like is being put forth now, Judge Crane's reaction, just like Judge Lake's reaction was, well wait, that's not what the exclusion says. You are ignoring the language of the exclusion. And if you look at the underlying, there's not much that's been mentioned regarding the underlying case, and what the construction defects allegations actually were, advanced against Usar, but if you look at those pleadings, the pleadings themselves are just replete with one breach of contract allegation after another, and it's almost impossible for me to see how it can seriously be argued that the underlying litigation does not arise directly or indirectly from a breach of contract. The breach of contract is the very essence of the underlying lawsuit. In fact, I'm sorry. The insurance policy is available if yours doesn't cover subcontractors. Judge, there are plenty of insurance policies available. There's CGL coverage available in the market from different insurance companies that don't, that won't have a breach of contract exclusion. In other words, this is a freedom of contract issue. If the insured wanted coverage that did not have this exclusion, it had every available way to obtain that kind of coverage from some other source. Now, clearly, the premium associated with that is probably going to be significantly more, but this is a coverage that is available in the marketplace. It's just a type of risk that Mount Holly made a conscious decision roughly 20 years ago that it did not want to, that it did not want to cover. In other words, it did not want to provide coverage that essentially forced it to pay to fix bad work done by its own insured. And there are a number of carriers that have taken that position. There are a number of carriers that are willing to provide that kind of coverage at a higher cost. Tell me again what this does cover. I'm sorry, Your Honor? Tell me again what this does cover with all these exclusions. Well, Judge, as I indicated earlier, this exclusion would virtually never apply to exclude coverage for any type of workplace accident, any bodily injury claim arising from construction. And as I indicated, we routinely, Mount Holly routinely defends and provides coverage for those types of claims. What this exclusion is primarily designed to do is to avoid providing coverage for the insurer's own bad work. And as I indicated previously, this is a, Mount Holly followed a suggestion that was made by a number of courts that have embraced this very scenario in the context of a construction defect coverage dispute. And again, it's not a novel concept and it's one that has been approved by a number of other courts. Now, another one of the fallacies, I guess, of HUSER's position, and it kind of permeates through their briefing and in the argument already made this morning, is that HUSER wants to equate an exception to an exclusion as a grant of coverage. And it's not. We've cited numerous cases in our briefing before this Court that explains that an exception to an exclusion is not an affirmative grant of coverage. And one of the reasons why that's important is because it helps explain why it's improper for HUSER, throughout its argument in this case, to essentially elevate the subcontractor exception to the work, to the year work exclusion, as if that exception provides an affirmative grant of coverage. It does not. It's instructive, I think, to consider the fact that HUSER spends way more time talking about the subcontractor exception to the year work exclusion than it does talking about the actual breach of contract exclusion that precludes coverage in this case. If you look at HUSER's briefing before this Court, and if you even look at HUSER's briefing before the trial court, they avoid almost entirely ever actually quoting the language from the Mount Holly breach of contract exclusionary endorsement, because the more you look at that language, the more you know that there's no coverage for this and that their position fails. That's what Judge Lake said. It's what Judge Crane said nine years ago. It's what Judge Orlando Garcia said within the last year in a companion case that we have against HUSER under virtually identical facts. Judge Garcia concluded in that case that Mount Holly had no duty to defend, that Mount Holly had no duty to indemnify, and he also held that the coverage was not —he rejected the argument that the coverage was illusory, and that's an argument that's reference to the Texas Supreme Court's opinion in Lamar Holmes as if to suggest that Lamar Holmes provides some support for the position that they advance in this case, and it simply does not. Even the most cursory reading of Lamar Holmes tells you that the importance of that case was that the Texas Supreme Court, once and for all, put to bed the argument the carriers were making when they would say, well, wait a minute. Defective construction doesn't constitute an occurrence, as that term is defined under the insuring agreement. Texas Supreme Court said, no, that's not going to fly. Defective construction can constitute an occurrence, and frankly, it's largely rulings like the Texas Supreme Court's ruling in Lamar Holmes to say, no, if you want to exclude this kind of conduct, you need to do it another way. You're not going to be able to rely on the insuring agreement. You're going to need to do it through an exclusion, and one of the specific exclusions that a number of courts specifically suggest to carriers in this context is a breach of contract exclusion. To the extent that there's any argument about whether or not, because there are negligence claims asserted in the underlying case, and HUSER has taken the position in its briefing that the breach of contract exclusion here shouldn't apply to a negligence claim, but that argument was specifically rejected by both Judge Lake and by Judge Crane, and for HUSER, the language of the exclusion is broad enough to encompass a negligence claim as long as that negligence claim arises directly or indirectly out of a breach of contract, and all you have to do is look at the underlying pleadings in this case to see that the negligence allegations and the breach of contract allegations are identical. They all arise out of the same conduct. What the underlying plaintiff says that HUSER did wrong was it didn't do the work in a good and workmanlike fashion. It says that HUSER failed to oversee appropriately its subcontractors. HUSER failed to make sure that its subcontractors did its work in a good and workmanlike fashion, that HUSER failed to make sure that the subcontractors did the work consistent with the plans and the specifications. There's just no denying from our perspective there's just really no serious argument that that suit with those kinds of allegations do not arise directly or indirectly from a breach of contract or a breach of warranty. Now HUSER has spent some time talking about the idea that the exclusion should only mean a breach of contract by HUSER directly. That's been one of the linchpins of HUSER's position both here and before Judge Garcia in the Western District. Just a couple of thoughts about that. First of all, it's not what the exclusion says. The exclusion doesn't say that. But even more importantly than that, that whole argument is essentially moot for two reasons. First of all, when HUSER undertakes contractually with a property owner to construct an apartment complex like they did in this case, one of the terms of that contract is that HUSER is going to do the work in a good and workmanlike fashion. Now it's certainly not unusual that HUSER, like most general contractors, decided to subcontract the vast majority of the work out to various subs. But just because subcontractors actually do the work, that doesn't relieve, I mean it's black letter law, that that doesn't relieve HUSER of its own contractual obligation that it undertook with the owner to make sure that the work gets done in the right way. In other words, whether a subcontractor ultimately does it or not, HUSER assumed that contractual obligation with the owner and it can't avoid contractual liability by trying to just distance itself and say, well, I know what I contracted with you to do, but they really did it. The law is very clear that that doesn't fly, number one. Number two, the allegations in the underlying case do not just represent or do not just assert claims against HUSER's subcontractor. As I indicated just a second ago, there are direct breaches that are alleged against HUSER as it relates to not doing the work in a good and workmanlike fashion and not making sure that its subs did and not making sure that its subs did the work in accordance with the plans and specs. In other words, even if you read the exclusion like HUSER wants to, that the breach of contract has to occur by HUSER, we have that here. The allegations in the underlying case clearly set forth multiple breaches of contract that are asserted by the property owner. Just to move very quickly to a couple of final points, the court, Judge Lake was correct in ruling that there was no duty to defend HUSER in the underlying case, and Judge Lake also correctly ruled that there was no duty to indemnify HUSER. It's well settled in Texas that if the same facts that negate the duty to defend also negate the duty to indemnify, then you can have a pre-judgment ruling as it relates to indemnity. And what Judge Lake held, as did Judge Garcia under virtually identical facts, have both said there's really no way that you could end up with any property liability being assessed against HUSER that would not arise directly or indirectly from a breach of contract. And so for that reason, in accordance with the farmer's decision from the Texas Supreme Court, Judge Crane and Judge Lake held that there was no duty to indemnify either, in addition to the duty to defend. In closing, Your Honors, I would say that Judge Lake's analysis at the trial court level was 100% correct. It was consistent with pronouncements from this court. It was consistent with the earlier pronouncement from Judge Crane. It was consistent with the ultimate conclusions reached by Judge Garcia. And we would close by simply saying and asking the court to affirm Judge Lake's analysis at the trial court level in Mount Holly's favor. Thank you very much for your time and assistance. All right. Thank you, Counsel. Rebuttal. Just a few things. I learned something in response to a few of the questions from the court. We've focused on the subcontractor exception, but it sounds like what Mount Holly's position actually is, is that this policy only provides coverage for bodily injury. You'll note that there was no discussion of any property damage that would be covered under this policy. Mount Holly has never told this court what property damage would be covered under this policy. What about if the individual is injured because your client or your subcontractor drives a truck into his car and injures him? And that's what the Scottsdale case that has been discussed in our brief says. And that case has been put forth by Mount Holly as a case that supports the proposition that the entire lawsuit is excluded if there's any allegations of breach of contract directly against the insured. But in that case, they did go and they kind of looked for that kind of hypothetical. And they did find, I think they said they damaged property while delivering a backhoe to the site. But in this case, Mount Holly has never told us what property damage is covered. And the initial grant of coverage, as we discussed in Lamar Holmes, provides coverage for bodily injury and property damage arising from an occurrence. And now, apparently not only does Mount Holly's breach of contract exclusion under their reading render the subcontractor exception meaningless, it actually renders the word property damage meaningless. Several other things. The Columbia casualty case, we distinguished that in our brief. That's a case where the insured raised the FELA exception. This court in the related case that we cited said, no, a FELA exception would only be a small subset of claims. A FELA claim would only be a small subset of claims that would be excluded by the pollution exclusion. Sorry, the pollution exclusion would only exclude a small subset of FELA claims. There wasn't the type of argument that's being made here that it completely renders an entire critical provision of the policy meaningless. And we note that Mount Holly has still never explained to this court what meaning the subcontractor exception has under its reading of the policy. The council mentioned this idea of contractual liability and claims directly against the general contractor. Well, there are always going to be claims directly against the general contractor, but the exclusion does not apply to contractual liability. And the commentary that we cited in our brief from Scott Turner, I think, was enlightening on this. He said, you know, if the general contractor, if the subcontractor's defective work causes property damage, then that is more akin to breach of contract arising out of property damage. In other words, the sub damages the work, but the general contractor remains liable for it because they're the general contractor. But the exclusion under a reasonable interpretation would not apply. There was a lot of discussion about the related case that's pending in the Western District of Texas. In that case, the court did find back in August of 2018 that Mount Holly owed a duty to defend HUSER, and Mount Holly continued its refusal to defend HUSER, filed a motion for reconsideration, which was eventually granted on a fairly fact-specific basis, but the court said, we're sticking by our analysis of the breach of contract exclusion. Council mentioned that that court also found that there was no duty to indemnify. That has actually been, in that case, HUSER has moved for reconsideration. And that motion is stayed, so I don't know that that's quite a final decision. Finally, as to the duty to indemnify, the Griffin exception is a very narrow exception, and it applies— That motion stayed pending the outcome in this case? I believe so. He hasn't expressly said that, but that seems to be the—the Griffin exception, and this is the D.R. Horton case, it only applies when there is no conceivable set of facts under the pleadings that—that could lead to covered liability. That's not what we have here. Thank you, Your Honors. Thank you, Counsel.